# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

SNAP MEDICAL
INDUSTRIES, LLC, *et al.*,

      Plaintiffs,

  v.

FOCUS HEALTH GROUP,
INC., *et al.*,

      Defendants.

:

:

Case No. 2:20-cv-5557
Judge Sarah D. Morrison
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Beth Cross's Motion to Dismiss for Lack of Personal Jurisdiction. (Mot. to Dismiss, ECF No. 9.) Plaintiffs have responded. (Resp., ECF No. 11.) No reply was filed. For the reasons set forth below, Ms. Cross's Motion is **DENIED**.

## I. BACKGROUND

The following summary draws from the allegations in the Amended Complaint (Am. Compl., ECF No. 7) and the sworn declaration submitted with Plaintiffs' Response (ECF No. 11-1).

Plaintiff Snap Medical Industries is an Ohio limited liability company located in Dublin, Ohio. (Am. Compl., ¶ 4.) Plaintiff Nancy Stamps, RN founded Snap to produce, market, and sell FDA-registered epinephrine convenience kits. (*Id.*, ¶¶ 10–11.) In late-2015, Snap entered into a nonexclusive Sales Distribution Agreement ("SDA") with Defendant Focus Health Group, Inc. (*Id.*, ¶ 12.) The relationship

soured three years later when Focus principal, Defendant Fred McBee, sought "a licensing agreement whereby Focus would produce and sell a product that was essentially identical to Snap's product," except for an NDC labeler code and product branding. (*Id*., ¶ 29.) Mr. McBee proposed the idea to Ms. Stamps as an opportunity to "'play a pricing game' with [] major wholesalers and government contracts" by offering two identical products at different price points. (*Id*., ¶ 30.) Ms. Stamps rejected the proposal. (*Id*., ¶ 31.) A few months later, "Mr. McBee, Ms. Cross [(a Focus employee)], and others at Focus asked Snap to print package cartons with the Focus branding and a Focus NDC labeler code" and "began requesting detailed product information about the Snap products." (*Id*., ¶ 35.)

Snap terminated the SDA effective June 1, 2019. (*Id*., ¶ 40.) "[A]lmost immediately after the termination of the SDA," Focus began marketing and selling a "copycat" epinephrine convenience kit under the brand name Epinephrine Professional. (*Id*., ¶¶ 52, 55.) In doing so, Focus allegedly "falsely represented [the Epinephrine Professional kits] as an improvement and replacement to Snap's products[.]" (*Id*., ¶ 54.) In one such instance on July 10, 2019, Ms. Cross sent an email to Dublin, Ohio-based Cardinal Health, stating:

> Our EpinephrineSnap-V (and ESnap-EMS) have undergone some product enhancements which requires NDC# changes. EpinephrineSnap-V, NDC# 70923-200-20 is now being **replaced** with **Epinephrine Professional, NDC# 24357-011-13** and EpinephrineSnap-EMS, NDC# 70923-100-20 is being replaced with Epinephrine Professional EMS, NDC# 24357-012-12. The Epinephrine Professional sell sheets are attached for your review.
>
> **Epinephrine Professional, NDC# 24357-011-13** (Replacing EpinephrineSnap-V 70912-100-20)

2

**Epinephrine Professional EMS, NDC#24357-012-12** (Replacing EpinephrineSnap-V 71923-200-20)

- *Epinephrine Professional offers an 'all-in-one' needle and syringe to save clinicians' time during an emergency.*
- *Epinephrine Professional has an easily removeable tamper evident safety seal.*
- *Epinephrine Professional is the same FDA registered medical epinephrine convenience kit for an anaphylaxis emergency, meeting protocols and delivering compliance in a safe, effective, and AFFORDABLE product.*

To continue bringing savings to healthcare, we are **reducing the kit WAC price on Epinephrine Professional, 24357-011-13 Convenience Kit to $80.00 and Epinephrine Professional EMS, 24357-012-12**. To make the product replacement seamless, we would like to reduce the price of our existing EpinephrineSnap-V, 71923-200-20 and ESnap-EMS, 719823-100-20 (if stocked) to that same $80.00 price as of July 10th.

What may I provide, or what steps do I need to take to make these needed NDC# change and replacement?

I will be in Dublin July 16th and 17th and it would be great to meet with you and your team to discuss the best way to proceed. Is this possible?

Thank you so much for your efforts.

(ECF No. 11-1, PAGEID # 105.)

Plaintiffs brought suit against Focus, Mr. McBee, and Ms. Cross, alleging two counts of tortious interference (Counts I and II), unfair competition under state law (Count III), unfair competition under federal law (Count IV), deceptive trade practices (Count V), and unjust enrichment (Count VI). (Am. Compl.) Ms. Cross now moves for dismissal of all claims against her for lack of personal jurisdiction. (Mot. to Dismiss.)

## II. STANDARD OF REVIEW

Rule 12(b)(2) provides for dismissal of a lawsuit for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of proving that jurisdiction exists, *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991), "over each defendant independently." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (quoting *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006)). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458. If a court rules on a Rule 12(b)(2) motion prior to trial, "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion." *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005) (citation omitted). "[T]he decision whether to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 434 (6th Cir. 2006) (citation omitted). Here, no party has requested further discovery or an evidentiary hearing, and the Court concludes that neither is necessary to rule on Ms. Cross's Motion.

When a court resolves a Rule 12(b)(2) motion based on "written submissions and affidavits . . . , rather than resolving the motion after an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to

4

defeat dismissal.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *Theunissen*, 935 F.2d at 1458) (cleaned up). A plaintiff can meet the burden by "establishing with reasonable particularity sufficient contacts between [it] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). In the absence of an evidentiary hearing, courts apply the *prima facie* standard weighing the evidence in the light most favorable to the plaintiff. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Nonetheless, the court may consider a defendant's undisputed factual assertions. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). If "there does not appear to be any real dispute over the facts relating to jurisdiction, the *prima facie* proposition loses some of its significance." *Id.* (internal quotations and citation omitted).

In support of their Response, Plaintiffs filed a sworn declaration of Jonathan P. Corwin, counsel for Plaintiffs, and email correspondence between Ms. Cross and Cardinal Health. (ECF No. 11-1.)

### III. ANALYSIS

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citation omitted). In a diversity action[1], the law of the forum state is applied to

---

[1] Although this Court also has federal question subject matter jurisdiction over Count Four (Unfair Competition — 15 U.S.C. § 1125) and supplemental

5

decide whether personal jurisdiction exists. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Because "Ohio's long-arm statute is not coterminous with federal constitutional limits," to establish a *prima facie* case of personal jurisdiction, a plaintiff must demonstrate that (1) Ohio's long-arm statute has been satisfied and (2) exercising jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012) (internal quotations omitted); *Kauffman Racing Equip., LLC v. Roberts*, 930 N.E.2d 784, 790 (Ohio 2010).

### A. Ohio's Long-Arm Statute

"Ohio's long-arm statute grants Ohio courts personal jurisdiction over a non-resident if his conduct falls within the nine bases for jurisdiction listed by the statute." *Conn*, 667 F.3d at 712. Plaintiffs assert that Ohio's long-arm statute confers upon this Court personal jurisdiction over Ms. Cross, and point to two provisions of the statute, in particular:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
> . . .
>
> (3) Causing tortious injury by an act or omission in this state; . . . [or]
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state [.]

---

jurisdiction over the remaining claims (*see* Am. Compl., ¶ 7), the parties' briefing treats the action as though purely based on diversity. Accordingly, the Court will do the same. *Cf. Neogen*, 282 F.3d at 887.

6

Ohio Rev. Code § 2307.382. Curiously, Ms. Cross did not find it necessary to address whether she is subject to Ohio's long-arm statute. The Court agrees with Plaintiffs.

Plaintiffs first argue that Ms. Cross's conduct falls under subsection (A)(3) because she traveled to Ohio in furtherance of the alleged tortious scheme against Plaintiffs. Ms. Cross does not rebut or respond to this assertion. Plaintiffs next argue that Ms. Cross's alleged conduct brings her within subsection (A)(6). Pertinent here, "district courts have found that fraudulent communications or misrepresentations directed at Ohio residents satisfy § 2307.382(A)(6)'s requirements." *Schneider*, 669 F.3d at 700 (citation omitted). Although "courts have taken a broad approach to jurisdiction under" (A)(6), the statute does not apply when a defendant could not have anticipated that the plaintiff would be injured in Ohio. *Grigor v. Starmark Hosp. Grp. LLC*, No. 2:10-cv-20, 2010 WL 2403137, at *5 (S.D. Ohio June 10, 2010) (Frost, J.) (quoting *Shaker Constr. Grp., LLC v. Schilling*, No. 1:08-cv-278, 2008 WL 4346777 (S.D. Ohio Sept. 18, 2008) (Dlott. J.)). Plaintiffs allege that Ms. Cross sent email correspondence to Cardinal Health (an Ohio-based company) containing misrepresentations about the epinephrine convenience kit produced by Snap (another Ohio-based company) and in furtherance of a tortious "bait-and-switch" scheme. Ms. Cross could have anticipated that any injury resulting from the emails would be suffered in Ohio.

The Court finds that its exercise of personal jurisdiction over Ms. Cross comports with Ohio's long-arm statute.

### B. Due Process Clause

If a defendant is found amenable to suit through Ohio's long-arm statute, attention turns to the Due Process Clause, "recognizing that a defect of this type would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would otherwise permit it." *Theunissen*, 935 F.2d at 1459. To satisfy due process, a court's exercise of its power over an out-of-state defendant must "not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Due Process Clause of the Fourteenth Amendment recognizes two types of personal jurisdiction—general and specific—either one of which is adequate to confer jurisdiction over a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

"If a court has general jurisdiction over a defendant, it can adjudicate any claims involving that defendant, regardless of where the cause of action arose." *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 849 (N.D. Ohio 2018). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home[,]" such as the corporation's place of incorporation and its principal place of business. *Goodyear*, 564 U.S. at 924. General jurisdiction may also exist over an out-of-state corporation when its contacts with the forum state "are so continuous and systematic as to render it essentially at

8

home in the forum state." *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct.1549, 1558 (2017). Plaintiffs concede that this Court does not have general jurisdiction over Ms. Cross.

"Specific jurisdiction refers to jurisdiction over claims arising from or related to a defendant's contacts with the forum state." *Maclin*, 314 F. Supp. 3d at 849. The Sixth Circuit has "promulgated a three-prong test that not only guides the determination of whether specific jurisdiction exists, but also protects the due process rights of a defendant[:]"

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). "Failure to meet any one of the three prongs means that personal jurisdiction may not be invoked." *Maclin*, 314 F. Supp. 3d at 849.

### 1. Ms. Cross purposefully availed herself of the privilege of doing business in Ohio.

Under *Southern Machine*, the Court first looks to whether Ms. Cross purposefully availed herself of the privilege of conducting business in Ohio. The Court determines that she has. "In the Sixth Circuit, the emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state." *Beydoun*, 768 F.3d at 605 (quoting *Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006)). "[T]he issue is not the quantity, but the quality of a defendant's contacts with the forum state." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 901 (6th

9

Cir. 2017) (citations omitted). Although "physical presence in the forum state is not required," it "is certainly a relevant contact." *Id.* at 900 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Walden v. Fiore*, — U.S. —, 134 S.Ct. 1115, 1123 (2014)). Courts have held that directing correspondence to the forum state is also a relevant contact and can itself establish personal jurisdiction when the correspondence gives rise to the action. *See, e.g., S. Mach. Co.*, 401 F.2d at 382; *Schmückle*, 854 F.3d at 902.

Here, Ms. Cross sent a series of emails directed at Cardinal Health—a large pharmaceutical supply distributor headquartered in Dublin, Ohio—allegedly in furtherance of a tortious scheme to replace Snap's products for Focus's. The July 10 email indicates that Ms. Cross intended to travel to Dublin the following week and sought meetings with the Cardinal Health contracting team. These contacts are sufficient to establish that Ms. Cross purposefully availed herself of the privilege of conducting business in Ohio.

Ms. Cross argues in favor of the opposite conclusion by pointing out that her contacts with Ohio were in a professional, and not personal, capacity. However, "the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants" where the defendant "is actively and personally involved in the conduct giving rise to the action." *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000). Ms. Cross's emails to

Cardinal Health show that she was actively and personally involved in the conduct giving rise to this action. Her argument, therefore, fails.

### 2. Plaintiffs' claims arise from Ms. Cross's activities in Ohio.

The Court next examines whether Plaintiffs' claims arise out of Ms. Cross's activities in Ohio. The Sixth Circuit has explained,

> [t]o satisfy the "arising from" prong of the *Southern Machine* test, the plaintiff must demonstrate a causal nexus between the defendant's contacts with the forum state and the plaintiff's alleged cause of action. *See Burger King Corp.*, 471 U.S. at 474, 105 S.Ct. 2174 ("[I]t may well be unfair to allow [out-of-state parties] to escape having to account in other States for consequences that arise proximately from such activities."). As our circuit has explained, "the cause of action must . . . have a substantial connection with the defendant's in-state activities." [*Dean*, 134 F.3d at 1275] (quotation marks omitted). Put another way, "[t]he 'arising from' requirement under the second prong [of the *Southern Machine* test] is satisfied when the operative facts of the controversy arise from the defendant's contacts with the state. 'Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract.'" [*Calphalon*, 228 F.3d at 723–24] (quoting *S. Mach. Co.*, 401 F.2d at 384 n. 29); *see also Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 451 (6th Cir. 2012) ("Even a single act by a defendant directed toward the relevant forum *that gives rise to a cause of action* can support" a finding of personal jurisdiction. (emphasis added, citation, quotation marks, and alterations omitted)).

*Beydoun*, 768 F.3d at 506–07. Ms. Cross's emails to Cardinal Health are part and parcel of the conduct giving rise to this action.[2] They form a part of the operative facts of the Amended Complaint, which therefore arises out of Ms. Cross's contacts with Ohio.

---

[2] The Sixth Circuit has acknowledged that there is overlap between the first and second prongs' analysis. *Beydoun*, 768 F.3d at 507 (citations omitted).

11

Ms. Cross argues that the second prong is not met—again, because her conduct was in a professional capacity. Ms. Cross points to no authority overcoming the clear dictates of the Sixth Circuit, or rebutting the assertion that she was personally and actively involved in the conduct giving rise to the action.

### 3. This Court's exercise of jurisdiction over Ms. Cross is reasonable.

Finally, the Court must determine whether its exercise of jurisdiction over Ms. Cross is reasonable. "When the first two prongs of our personal jurisdiction test are met, there is an inference of reasonableness and 'only the unusual case will not meet this third criteria.'" *Schmückle*, 854 F.3d at 903–04 (quoting *Air Prods. & Controls*, 503 F.3d at 554). The reasonableness determination is made upon review of the following three factors: "(1) the burden on the defendant; (2) the forum state's interest; and (3) the plaintiffs' interest in obtaining relief." *Id.* (citing *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 666 (6th Cir. 2005)).

There is nothing unusual about this case that would rebut the inference of reasonableness. Ms. Cross's previous travel to Ohio evidences that the trip does not present a great burden. Further, Ohio has an interest in ensuring that its citizens are able to conduct their business free from misrepresentations and tortious harm, such as those alleged here.

## IV. CONCLUSION

Plaintiffs have made a *prima facie* showing that this Court has personal jurisdiction over Ms. Cross. Accordingly, Ms. Cross's Motion to Dismiss (ECF No. 9) is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**